KIERMAN REALTY COMPANY
OF RANDOLPH, INC.
v.
Raymond J. MICHETTI, ET AL[1]

Case No. 267

District Court Department
Appellate Division, Southern District
Trial Court of the
Commonwealth of Massachusetts

March 2, 1981

[1]The other defendant is Anna K. Michetti.

Joseph A. Lombardi for the plaintiff.
Michael M. Maxey for the defendant.

Present: Lee, P.J., Rider, J. and Staff, J.

## OPINION

RIDER, J. This is a civil action sounding in contract for the recovery of a commission alleged to be due to the plaintiff real estate broker. Under Count I recovery is sought in the amount of $4,193.00 pursuant to a written purchase and sale agreement. Count II is in quantum meruit. In answer to Count I, the defendants (sellers) allege that under the written agreement they are not liable for any broker's commission since the payment of any commission was conditioned upon the passing of title. In answer to Count II the defendants deny that the plaintiff is entitled to recover in quantum meruit.

The court found for the plaintiff under Count I and assessed damages in the amount of $4,193.00. The court·found for the defendants on Count II.

At the trial, evidence on behalf of the plaintiff tended to show that a valid purchase and sale agreement was executed by the defendants and one Maria R. Soares (buyer) on or about March 10, 1978, with passing of title scheduled for July 28, 1978 (apparently typed first as June 29, 1978 and then stricken); that the agreement was prepared in its entirety by the plaintiff, its agents, servants or employees; that the purchase and sale agreement (a copy of which is annexed to the report) provided that "A Broker's fee for Professional Services of $4,193.00 is due from Seller to Kierman Realty Co. **only if and when papers pass and the deed is recorded**" (underlining added); that the sole and exclusive agreement concerning the payment of a broker's commission by the defendants to the plaintiff was that contained in the purchase and sale agreement.

On July 14, 1978 a written extension of the agreement from July 28, 1978 to November 28, 1978 was executed by the defendants, the..buyer and Richard W. Kierman as broker. In September, 1978 the buyer became convinced that title was not going to pass. Upon legal advice obtained from her own counsel, she and the defendants executed mutual releases for $1.00 and other valuable consideration. The plaintiff returned to the buyer her deposit of $5,000.00 and title to the property never passed. The defendants did not give the buyer any reason for not completing the sale other than that they were having difficulty finding a suitable house or land to build upon.

When the plaintiff rested, the defendants filed a motion for directed finding on Counts I and II of plaintiff's complaint. Respecting Count I, the defendants assert "that in this case the plaintiff seeks to recover on a contract in which there existed a condition precedent, to wit: a final sale of the property

which must be satisfied before the defendant is obligated to pay the broker's commission and that the plaintiff, having failed to prove this condition was met, must be denied any recovery on the contract." Since the finding for the defendants on Count II of plaintiff's complaint has not been appealed, the portion of defendants' motion relating to said count is not in issue here.

The trial judge reserved decision on the defendants' motion. The defendants then introduced evidence which is not reported and the substance of which is not here in issue.

At the close of the evidence the defendants renewed their motion for directed finding. The judge denied this motion, to which denial the defendants objected and claimed a report thereon.

The judge made the following special findings of fact:

"The plaintiff obtained a purported purchaser, Maria R. Soares, who, on or about March 10, 1978, executed a valid Purchase and Sale Agreement (Ex. #1) with the defendants-sellers at a selling price of $59,900.00 and a designated passing date of June 29, 1978. The passing of title was subject to said Soares obtaining mortgage funds for a specified amount.

A broker's fee of $4,193.00 was to be paid by the defendants-sellers to the plaintiff "only if an (sic) when papers pass and the deed is recorded".

Said Soares delivered a $5,000.00 deposit to the plaintiff and subsequently the plaintiff assisted said Soares in obtaining the necessary bank commitment relative to mortgage financing as set out in the Purchase and Sale Agreement.

The defendants then, unsuccessfully, set about seeking to find a suitable replacement home and/or arranging to acquire land in Braintree to build a new house. The defendants looked at or visited approximately fifty (50) houses and inquired about land costs from at least one builder-developer.

Mrs. Soares visited the defendants' house on many occasions after signing the Purchase and Sale Agreement making it known that she, Soares, who had a large family, was very anxious to buy and move into the defendants' house.

On or about July 14, 1978 the defendants requested and obtained from said Soares an Extension of the Purchase and Sale Agreement (Ex. #2) extending the passing date until November 28, 1978.

In the Spring of 1978, said Soares began to use as her mailing address the address of the defendants namely, 54 Truman Drive, Randolph, Mass. In early July 1978, Soares obtained permission from the defendants to store furniture, and did so, at the home of the defendants. At one time Soares requested that the defendants release her from the intended sale and the defendants refused stating that they were still looking for a suitable replacement home or land.

In September, Soares became apprehensive about whether title was ever going to pass and upon legal advice obtained, from her own counsel, she and the defendants executed mutual releases for $1.00 and other valuable consideration, dated September 5, 1978 Ex. #3 and Ex. #4.

Consequently, title never passed and Soares demanded and received her $5,000.00 deposit which had been held by the plaintiff.

At no time did the defendants give said Soares any reason for not completing the sale other than that they were having a difficult time finding a suitable house or land to build upon.

COUNT I: The Court specifically finds, as a fact, that the only reason why the intended sale was not completed was because the defendants refused to do so and not because of any fault or failure upon the part of the plaintiff and/or said Soares.

The Court finds that the plaintiff obtained a buyer, Soares, who was ready, willing and able, at all times material to purchase the property of the defendants located at 54 Truman Drive, Randolph, Mass. as set out in Exhibit #1.

Therefore, the Court finds for the plaintiff in the sum of $4,193.00.

The defendants rely upon the phrase "only if and when papers pass and the deed is recorded", supra, as the reason why they should not be liable to the plaintiff; citing **Creed v. Apog** 1978 A.S. 376 N.E.2d 154, 158, and **Tristram's Landing Inc. v.**

Wait 367 Mass. 622, (1975).

Tristram's case was an action brought by the proposed seller against its broker for the recovery of a deposit given by a prospective purchaser (Cashman) who never complied with the terms of a Purchase and Sale Agreement he had executed with the seller and therefore inapplicable to the instant case.

However, what is significant in the Tristram's case is that the Mass. Supreme Judicial Court adopted the case of Ellsworth Doobs Inc. v. Johnson 50 N.J. 528 (1967) as new Massachusetts law and at page 629 of the Tristram's case cited on page 551 of the Ellsworth (sic) case which reads:

'On the other hand, if the failure of completion of the contract results from the wrongful act of interference of the seller the broker's claim is valid and must be paid'.

Ordinarily, when an owner of property engages a broker to sell his property, he wants the broker to find a purchaser, not only able to purchase, but able to complete the sale as well. Therefore, many sellers, to protect themselves, make the payment of a commission conditioned upon the com- pleted sale, as was done by the defendants in the instant case.

However, when the broker produces a buyer like said Soares, who, at the time, was ready, willing and able to not only purchase but to complete the sale, the Law will not then permit the defendant-sellers to prevent and defeat the very happening or result which they intended to achieve by the insertion of such a phrase, as mentioned above.

To do otherwise would result in the de- fendants gaining by their own wrongdoing and would make a sham of all future Pur- chase and Sale Agreements.

COUNT II: Finding for the defend- ants."

The report states that it contains all the evidence material to the question reported.

The defendants claim to be aggrieved by the denial of their motion and assert that, because the plaintiff failed to prove the occurrence of the condition precedent, a finding for the defendants on Count I was required as a matter of law. We agree.

We treat defendants' motion for directed finding as a request that a finding for the defendants on Count I is required as a matter of law. The denial of this motion is equivalent to a ruling that the evidence warranted a finding for the plaintiff. Irving v. Bonjorno, 327 Mass. 516, 518 (1951). See, Wire & Textile Machinery, Inc. v. Robinson, 332 Mass. 417, 418 (1955).

I.

It is axiomatic that the construction of a written contract where there is no ambigu- ity is a question of law for the judge to decide. Sherman v. Employers' Liability Assurance Corp., Ltd., 343 Mass. 354, 356 (1961); Jacobson v. Jacobson, 334 Mass. 658, 661 (1956); Hiller v. Sub- marine Signal Co., 325 Mass. 546, 549- 550 (1950); Freeman v. Sieve, 323 Mass. 652, 657 (1949).

In this instance the written contract con- sists of the purchase and sale agreement of common form, which was prepared by the agents or employees of the plaintiff, and the extension thereof, which was executed by the buyer, the defendants and "Richard W. Kierman, Broker." The issue of this case revolves around the provision of the agree- ment that "(A) Broker's fee for Profes- sional Services of $4,193.00 is due from Seller to Kierman Realty Co. only if and when papers pass and the deed is recorded." These words are plain and free from ambi- guity and must be construed in their usual and ordinary sense. Sherman, supra, at 356.

In the landmark case of Tristram's Land- ing, Inc. v. Wait, 367 Mass. 622 (1975), the only reference to a broker's commission was found in the purchase and sale agree- ment signed by the buyer and the seller, which read: "It is understood that a broker's commission of five (5) per cent on the said sale is to be paid to . . . (the broker) by the said seller." After default of the buyer, the plaintiff broker sued the defendant seller for the stated commission. In denying recovery to the plaintiff, the Court, at 627, construed the language "on the said sale" as providing

for a "special agreement" or as creating " 'special circumstances,' Henderson & Beal, Inc. v. Glen, 329 Mass. 748, 751 (1953), wherein consummation of the sale became a condition precedent for the broker to earn his commission." Similarly, we construe the provision "only if and when papers pass and the deed is recorded" to be a condition precedent in this case which has not been fulfilled.

Our position finds support in the case of Creed v. Apog, _____ Mass. App. Ct. _____ (1978).[a] In a suit brought by a real estate broker and others for services, the Court affirmed judgments for the defendants where the written agreement promised to the plaintiff a commission or other compensation "only if, as, and when the option in said Land Purchase Option is exercised, title passes thereunder and the full consideration therein set forth is paid to me, but not otherwise." The option was not exercised and the plaintiffs were denied recovery.

In affirming judgments for the defendants, the Court remarked, at 580:

It is well settled that a property owner may be clear and unambiguous language condition his liability for the payment of a broker's commission on the happening of events beyond the broker's simple production of a customer ready, willing, and able to purchase the owner's property. Spritz v. Brockton Savings Bank, 305 Mass. 170, 170-171 (1940). Gaynor v. Laverdure, 362 Mass. 828, 835-836 (1973). Tristram's Landing, Inc. v. Wait, 367 Mass. 622, 625-626 (1975). Williston, Contracts § 1287, at 961-962, 978 (3d ed. 1967). See also, Munroe v. Taylor, 191 Mass. 483 (1906) and Staula v. Carrol, 312 Mass. 693.

The Massachusetts Appeals Court has had occasion to define further its holding in the Creed case in Kenny v. DiCenso, _____ Mass. App. Ct. _____ (1980)[b]:

Creed's teaching is that when an agreement between a broker and his principal is clear and unambiguous as to the principal's duty to compensate, the parties are bound by the agreement and the broker may not recover without a showing of compliance with its terms. Creed v. Apog, _____ Mass. App. Ct. at _____.[c]

## II.

We turn now to the finding of fact of the trial judge upon which his finding for the plaintiff on Count I hinges:

The Court specifically finds, as a fact, that the only reason why the intended sale was not completed was because the defendants refused to do so and not because of any fault or failure upon the part of the plaintiff and/or said Soares.

To buttress his finding for the plaintiff, the judge cited the quotation in Tristram's Landing, Inc. v. Wait, 367 Mass. 622, 629 (1975), taken from Ellsworth Dobbs, Inc. v. Johnson, 50 N.J. 528, 551 (1967):

On the other hand, if the failure of completion of the contract results from the wrongful act or interference of the seller, the broker's claim is valid and must be paid.

We recognize that findings of fact of the trial judge may not be disturbed on appeal if they are permissible upon any reasonable view of the evidence, or unless plainly wrong. Zaleski v. Zaleski, 330 Mass. 132, 134 (1953); Barttro v. Watertown Square Theatre, Inc., 309 Mass. 223, 224 (1941); Kennedy Bros., Inc. v. Bird, 287 Mass. 477, 484 (1934). However, findings of fact made by the trial judge are not a part of the trial record and must be supported by reported evidence. Findings cannot supply evidence that the report lacks. Tranfaglia v. Security National Bank, 53 Mass. App. Dec. 25, 30 (1973); Morville v. Villemaire, 45 Mass. App. Dec. 132, 137 (1970); Pettinella v. Worcester, 39 Mass. App. Dec. 7, 9 (1967).

Granted that the defendants were not ready to pass papers on July 28, 1978, and that they doubtless requested the extension of time. Nevertheless, this is a common

---

[a] 1978 Mass. App. Ct. Adv. Sh. 573.

[b] 1980 Mass. App. Ct. Adv. Sh. 1023.

[c] 1978 Mass. App. Ct. Adv. Sh. at 580-581.

occurrence. Requesting, and obtaining, such an extension is hardly to be found to be a refusal to complete the sale, a wrongful act or interference of the seller. Furthermore, it was the buyer, not the sellers, who initiated the termination of the agreement at a time when the extension of the agreement had two months or more to run. Finally, there is no reported evidence to support the finding of fact "that the only reason why the intended sale was not completed was because the defendants refused to do so. . . ."

We detect no reported evidence of wrong-doing on the part of the defendants nor any gain thereby derived by them.

Since our decision is decisive of the issue raised by defendants' motion, it would serve no useful purpose to remand this case to the trial court for further proceedings. The finding for the plaintiff under Count I of its complaint is vacated and judgment is to be entered for the defendants on that count.

So ordered.

Edward A. Lee, P.J.
Daniel H. Rider, J.
Richard O. Staff, J.